Maurice Levine, Trustee in Bankruptcy of the Estate of Laurence B. Knott, Bankrupt, Plaintiff-Appellant, v. John C. Unruh, Jr., Defendant-Appellee.

Gen. No. 67–159.

Second District.

September 17, 1968.

Ruddy, Myler & Bartsch, of Aurora, for appellant.

Kirkland, Brady, McQueen, Martin & Callahan, of Elgin, for appellee.

MR. PRESIDING JUSTICE ABRAHAMSON delivered the opinion of the court.

The plaintiff brings this appeal from an order of the Circuit Court of Kane County entered September 1, 1967, that dismissed his complaint pursuant to the motion of the defendant.

On March 28, 1964, John C. Unruh, Jr. obtained an assignment to an $\frac{8}{128}$ interest in a certain oil lease pertaining to property located in Ohio. On May 29, 1964, Unruh and Laurence B. Knott entered into an agreement evidenced by a short signed document entitled simply "Agreement" which recited that Unruh "guarantee to Laurence B. Knott" delivery of $\frac{1}{2}$ of his rights in the oil lease and that Unruh "relinquish all claims for this amount as of May 1, 1964." In consideration, Knott paid $15,000 to Unruh on the execution of the agreement and a further $15,000 in agreed installments with a final payment due on June 20, 1965. The final payment of $7,500 was accelerated and was made on April 10, 1965. The name of Knott was inserted on the original assignment

on May 29 and thereafter Knott received all royalties and profits for the portion of the lease purchased by him.

On December 22, 1966, Knott was adjudicated a bankrupt pursuant to his voluntary petition in the United States District Court for the Northern District of Illinois, Eastern Division, Case No. 66 B 9763, and Maurice Levine, the plaintiff and appellant herein, was duly appointed Trustee in that cause. On May 1, 1967, Levine notified Unruh by registered mail that he was electing to declare the sale of the interest in the oil lease to Knott void pursuant to the Illinois Securities Law and requested return of the $30,000 with interest. Unruh refused to rescind the sale or return the purchase price and suit was filed by Levine on July 5, 1967.

██ The Illinois Securities Law (Ill Rev Stats, c 121½, § 137.1 et seq., 1965) was enacted to protect the public from unscrupulous stock promoters by requiring the registration and approval of securities by the Secretary of State. A purchaser of an unregistered security may, under certain circumstances avoid the sale and recover the purchase price. Section 137.13D of the Act provides:

> "No action shall be brought for relief under this Section or upon or because of any of the matters for which relief is granted by this Section after three years from the date of sale."

██ The plaintiff contends that the "date of sale" as contemplated by the Act would be the date of the final installment payment of the total purchase price, April 10, 1965, and that therefore the action was commenced within the proscribed time. In support of this contention, the plaintiff relies heavily on the recent case of Silverman v. Chicago Ramada Inn, Inc., 63 Ill App2d 96, 211 NE2d 596 (1965). In that case the plaintiffs agreed to purchase certain unregistered securities in March of 1959 and made the first payment at that time. Subsequent installment

payments were made on March 19, May 5 and the final payment on October 20, 1959. A suit to rescind the sale was brought in July of 1962 and was dismissed by the trial court on the finding that the plaintiffs had failed to commence the action within the three years as required by section 137.13D of the Act. The Appellate Court for the First District briefly reviewed the purpose of the Securities Act and repeated the language of earlier decisions that the Act was paternalistic in character and should be liberally construed to give meaning to the intention of the legislature to afford protection to the unwary in the sale of securities. Acting on that theory, the court concluded that any of the installment payments could be considered a "sale" as contemplated by the Act and held that the suit had been timely. However, in that case the actual transfer of the certificates was not made until the payment of the final installment in October of 1959 and the Court stated that "The final payment in October, the transfer of the stock certificates and debentures, and the passing of title at that time completed the sale and fixed the rights of the parties."

The circumstances in the instant case differ from those in the Ramada Inn case. The "Agreement" executed May 29 recited that Unruh relinquished all of his rights to that portion of the lease sold as of May 1. The assignment originally obtained by Unruh was amended by the insertion of Knott's name on May 29 and he collected all royalties and profits on his portion of the lease after that date. Notwithstanding the unsophisticated transfer or the fact that the balance of the purchase price was paid in installments, we conclude that the parties intended that title to ½ of Unruh's interest in the lease be conveyed and the sale consummated on May 29, 1964, and that the time limitation for legal action imposed by the Act began to run on that date.

From that conclusion, we would have agreed that the suit filed in July of 1967 was vulnerable to a motion to

dismiss except for the intervention of the bankruptcy adjudication on December 22, 1966. Section 11E of the Bankruptcy Act (11 USCA § 29(e)) provides in part as follows:

> "A receiver or trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not expired at the time of the filing of the petition in bankruptcy."

■ The defendant calls attention to the distinction between an ordinary statute of limitation and special limitations on causes of action created by statute. An ordinary statute of limitations is a limitation on the remedy only since the rights exist in common law and independent of statute. A special limitation can, however, be contained within a statute that itself creates the right. In the latter case, the limitation is more than a remedial restriction but defines and limits the existence of the right itself. The distinction has long been recognized by Illinois courts. In some instances, the time limitations in statutory causes of action have been deemed conditions precedent to the right of recovery. Lowrey v. Malkowski, 20 Ill2d 280, 283, 284, 170 NE2d 147; Wilson v. Tromly, 404 Ill 307, 311, 89 NE2d 22; Fitzpatrick v. Pitcairn, 371 Ill 203, 210, 20 NE2d 280.

The defendant contends that this distinction is maintained by the Bankruptcy Act and that section 29(e) has no application to special limitations on causes of action created by statute such as section 137.1 et seq. of the Illinois Securities Act. In support of that contention, defendant cites the case of Charlesworth v. Hipsh, Inc.,

84 F2d 834 (1936) where the Federal Circuit Court of Appeals, Eighth Circuit, did indeed state that a 90-day limitation on causes of action created by the Missouri Bulk Sales Law could not be extended by any provisions of the Bankruptcy Act. However, the Charlesworth case decided that the particular bulk sales law had no application in any event and its comments on the time extensions provided by the Bankruptcy Act were dictum only.

The later case of Sproul v. Gambone, 34 F Supp 441 (1940) ruled the exact opposite from the Charlesworth case in that it holds that the 90-day special limitation contained in the Pennsylvania Bulk Sales Law was tolled by an intervening adjudication of bankruptcy pursuant to section 29(e). The Sproul decision recites the legislative history of section 29(e) and states:

"This all leads us to the conclusion that defendant's motion to dismiss must be denied, whether the statute of limitations bars either the right or the remedy, for as we view the law, the state statute as to limitation must yield to the requirements of bankruptcy administration."

In the case of Dower v. Bomar, 313 F2d 596 (1963) the U. S. Court of Appeals, Fifth Circuit, considered a Florida usury statute that provided that action could "only be commenced" within two years from the date the alleged usury occurred. The Court held that the limitation was tolled by an intervening adjudication of bankruptcy by section 29(e) of the Act and rejected the defendant's contention that section 29 did not apply to the substantive rights established in the Florida law. The court concluded that Congress intended section 29(e) to apply to both remedial and substantive limitations and that they had the constitutional power to so do. The 1966 case of United States v. Paul Hardeman, Inc. (260

99

F Supp 723) held that a substantive time limitation contained in the federal Miller Act (40 USC § 270(b)) was tolled by an intervening bankruptcy and cited the Dower case as authority for the proposition that the distinction was not recognized by the Bankruptcy Act.

The case of In re Warren, 192 F Supp 801 (1961), cited by defendant, is distinguishable. It deals with paragraph (f) of section 29 of the Bankruptcy Act, the reverse side of the coin to paragraph (e) in that it provides that the time limitations of debts owed by a bankrupt are also extended by an adjudication. The Warren case held that paragraph (f) does not extend the period in which a claimant can perfect a line under a state mechanics lien law since the provision applies only to debts of the bankrupt and not to security for the debts.

■■ There is nothing in the Bankruptcy Act to compel the interepretation of section 29(e) urged by the defendant. It is obvious that the trend of the reported decisions refutes his position. While we recognize the difference between ordinary and special limitations, we feel that section 29(e) was intended to apply to both and that herefore the limitations contained in the Illinois Securities Act were extended for an additional two years by Knott's intervening adjudication of bankruptcy.

Accordingly, this cause is reversed and remanded for further proceedings consistent herewith.

Reversed and remanded.

DAVIS and SEIDENFELD, JJ., concur.