596 F.Supp. 219 (1984)
SOUTHWEST INVESTMENTS I, et al., Plaintiffs,
v.
MIDLAND ENERGY COMPANY, INC., et al., Defendants.
No. 84-347C(1).
United States District Court, E.D. Missouri, E.D.
October 12, 1984.
*220 *221 Alan E. Popkin, St. Louis, Mo., for plaintiffs.
J. Martin Hadican, Clayton, Mo., Andrew B. Leonard, Manchester, Mo., for defendants.

MEMORANDUM
NANGLE, Chief Judge.
This case is now before this Court on defendants Midland Energy Company, Inc.'s and Don C. Webb's motions to dismiss plaintiffs' complaint for lack of subject matter jurisdiction and to dismiss Count II of plaintiffs' complaint for failure to state a cause of action.
Plaintiffs' cause of action arises out of their alleged investment of $741,000.00 with defendants. According to the complaint, Odessa Company (hereinafter "Odessa"), a partnership, and Midland Energy Company, Inc. (hereinafter "Midland"), a Kentucky Corporation, were engaged in the business of investing money in various ventures, including the coal market. Odessa and Midland were controlled by defendants William Scott Watson (hereinafter "Watson") and Don C. Webb (hereinafter "Webb"), respectively. The complaint alleges that plaintiffs invested money with defendants in reliance on defendants' representations that the funds would be invested in the coal market and that plaintiffs would receive a return of six per cent (6%) to twenty per cent (20%). The complaint further alleges that defendants' representations were false. Attached to the complaint is one of several contracts governing the investment relationship entered into between plaintiffs and defendants. The provisions of this contract must be examined in detail.
The document is entitled "Agreement" and refers to plaintiffs, generally, as "Principal" and to defendants, generally, as "Agent." Principal agreed to "advanc[e] funds ... to Agent ... for the purpose of purchasing coal...." Agent agreed to do six (6) things. First, Agent agreed to pay Principal $0.50 for every ton of coal purchased by Agent with Principal's money, but the price per ton of the coal purchased could not exceed $25.00/ton. Second and third, Agent agreed to provide Principal with periodic notice of purchases and payment of returns. Fourth, Agent granted to Principal a security interest in Agent's accounts receivable "to the extent of the funds due Principal from time-to-time under the terms of this Agreement." Fifth, Agent agreed that "[u]pon receipt of written request from Principal for a return of Principal's funds, Agent will return said funds within a 2-week period from date of receipt of said notice." Finally, Agent agreed that if it would ever be in default on either the payment of $0.50 per ton or return of Principal's funds, then it would pay Principal interest at the rate of fiften per cent (15%) per annum on the amount in default.
Plaintiff's complaint consists of five (5) separate counts. Counts I and II allege that defendants' conduct violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), as well as Rule 106-5 promulgated hereunder, 17 C.F.R. § 240.106-5, and § 12(2) of the Securities Act of 1933, 15 U.S.C. § 770(2), respectively. The remaining counts are based on state law. Count III alleges violations of Missouri securities statutes, Mo.Rev.Stat. § 409.411 (1978). Count IV alleges common law fraud and Count V alleges breach of contract.
In passing on a motion to dismiss, a court is required to view the facts alleged in the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A motion to dismiss will not be granted merely because the complaint does not state every element necessary for recovery with precision. 5 Wright & Miller, Federal Practice and Procedure: Civil § 1216 at 120 (1969). A complaint is sufficient if it "contain[s] allegations *222 from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." Id. at 122-23. A complaint should not be dismissed unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46, 78 S.Ct. at 101.
Movants Midland and Webb first challenge the sufficiency of the allegations in Count II. Movants argue that Count II fails to state a claim on which relief can be granted because it is silent as to when plaintiffs discovered that defendants' representations were untrue. Movants rely on § 13 of the Securities Act of 1933, 15 U.S.C. § 77m, to support their argument that such an allegation is essential to a cause of action under § 12(2), 15 U.S.C. § 77l(2). § 13 provides, in pertinent part, as follows:
No action shall be maintained to enforce any liability created under Section 77k or 771(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence....
15 U.S.C. § 77m. Section 13 is not a typical statute of limitations because compliance must be affirmatively pleaded to validly state a cause of action under § 12(2). Hagert v. Glickman, Lurie, Eiger & Co., 520 F.Supp. 1028, 1033 (D.Minn.1981).
Plaintiffs argue that compliance with § 13 can be inferred from the complaint because ¶ 9 alleges that a check from defendants to plaintiffs was dishonored in November, 1983. However, this allegation fails to satisfy the specificity required by § 13. "[A] plaintiff must affirmatively plead facts indicating the action has been timely brought." Id. (citations omitted). Paragraph 19 fails to allege that plaintiff first discovered in November, 1983, that defendants' statements were untrue. Count II will be dismissed, unless, within fourteen (14) days of this date, plaintiffs amend Count II to affirmatively plead compliance with § 13. Leave to so amend is granted.
Movants' second motion challenges this Court's jurisdiction over the subject matter of plaintiffs' complaint. Subject matter jurisdiction over Counts I and II is based upon § 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and § 22 of the Securities Act of 1933, 15 U.S.C. § 77v, respectively. Because Counts III, IV and V are state law claims and the citizenship of the parties is not diverse, subject matter jurisdiction over said counts rests on the doctrine of pendent jurisdiction. United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Thus, if this Court lacks subject matter jurisdiction over Counts I and II, the entire complaint must be dismissed. Id.
Subject matter jurisdiction does not exist under either the Securities Exchange Act of 1934 or the Securities Act of 1933 unless the transactions in question involved a "security" within the meaning of both acts. "Security" is defined in § 3 of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10) and § 2 of the Securities Act of 1933, 15 U.S.C. § 77b(1). The two (2) definitions are virtually identical. Tcherepnin v. Knight, 389 U.S. 332, 335-36, 88 S.Ct. 548, 552-53, 19 L.Ed.2d 564 (1967). The definitions themselves do not contain meaningful legal standards, but instead consist of a litany of labels for various financial devices which Congress intended to bring within the scope of the federal securities laws. However, the Supreme Court "has endorsed an approach to interpreting the federal securities laws that emphasizes `the economic realities underlying a transaction, and not on the name appended thereto.'" Kansas State Bank in Holton v. Citizens Bank of Windsor, 737 F.2d 1490 (8th Cir. 1984) (quoting United Housing Foundation v. Forman, 421 U.S. 837, 849, 95 S.Ct. 2051, 2059, 44 L.Ed.2d 621 (1975).
In SEC v. W.J. Howey, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), the Supreme Court established a test for distinguishing *223 a "security" from those commercial transactions which Congress did not intend to be protected by the federal securities laws. Id. at 301, 66 S.Ct. at 1104. Recently, in Citizens Bank of Windsor, the Eighth Circuit paraphrased the Howey test, as follows:
(1) an investment (2) in a common venture (3) with a reasonable expectation of profits (4) to be derived from the entrepreneurial or managerial efforts of others.
Citizens Bank of Windsor, 737 F.2d at 1494 (citation omitted). While the transactions in Howey and Citizens Bank of Windsor were an investment contract and a loan participation agreement, respectively, both the Supreme Court and the Eighth Circuit have indicated that the Howey test is not so limited. United Housing Foundation v. Forman, 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975); Citizens Bank of Windsor, 737 F.2d at 1494 n. 7. Thus, the Howey test, as restated by the Eighth Circuit in Citizens Bank of Windsor, expresses the standard for determining whether plaintiffs' transactions with defendants involved a security and whether this court has subject matter jurisdiction over plaintiffs' complaint.
The first element of a security, an investment, is the primary area of disagreement herein. This element "presents the task of distinguishing investments from commercial transactions." Citizens Bank of Windsor, 737 F.2d at 1495. As the Eighth Circuit noted in Citizens Bank of Windsor, other circuits have developed various tests for making this distinction. These tests include the "investment-commercial" test, see, e.g., National Bank of Commerce v. All American Assurance Co., 583 F.2d 1295 (5th Cir.1978); the "risk capital test," see Great Western Bank and Trust v. Kotz, 532 F.2d 1252 (9th Cir.1976); and the "presumption" test, see, e.g., Chemical Bank v. Arthur Andersen & Co., 726 F.2d 930 (2d Cir.1984). In Citizens Bank of Windsor, the Eighth Circuit declined to adopt any of the three (3) tests, but it did examine several of the factors that comprise said tests in determining that the loan participation before it was a "standard commercial loan" rather than an investment. Citizens Bank of Windsor, 737 F.2d at 1495. The participation in that case was processed by a bank as a loan, was collateralized, was payable on demand at a fixed rate of interest, and the proceeds were intended to be used as operating funds rather than for capital improvement.
The characterization of the agreement herein as an investment or a standard commercial loan presents a close question. The attributes which make it akin to a commercial loan are: 1) the funds were intended to be used for operating purposes, such as the purchase of coal; 2) the funds were collateralized by defendants' accounts receivable; 3) the funds were payable on demand; and 4) there was a default clause with a provision for the payment of interest at a fixed rate. On the other side of the ledger are the following facts: 1) the rate of return to plaintiffs was contingent on the price per ton of coal obtained by defendants; 2) the form of the agreement was not that of a loan; and 3) plaintiffs were not commercial lenders. In the opinion of this Court, the contingent rate of return is the most significant fact and tips the balance in favor of finding that the agreement in the case at bar was a security.
Although the amount of return to plaintiffs for each ton of coal purchased was fixed at $0.50 per ton, the rate of return was contingent on the price per ton. The maximum price per ton was $25.00. If the price obtained by defendants was $25.00 per ton, then plaintiffs' rate of return would be two per cent (2%). Towards the other end of the spectrum, if defendants were able to purchase a ton of coal with plaintiffs' money for $1.00 per ton, then plaintiffs' rate of return would be fifty per cent (50%). Thus, plaintiffs took a significant risk concerning the rate of return and it is this risk that distinguishes the agreement in question from a standard commercial loan. Plaintiffs accepted more than the risk of nonpayment of their funds. Cf. *224 Williamette Savings & Loan v. Blake & Neal Finance Co., 577 F.Supp. 1415, 1423 (D.Or.1984). In addition, while it is true that plaintiffs were collateralized to some extent, they were not collateralized in the commercial sense because they were "as dependent upon the management skill of [defendants] as is an unsecured lender." Great Western Bank & Trust v. Kotz, 532 F.2d 1252, 1258 n. 4 (9th Cir.1976).
Having concluded that the agreement herein was an investment, it is not difficult to further conclude that it was a security because the other elements of the Howey test are not seriously disputed. The activities of defendants, viewing the complaint in the light most favorable to plaintiffs, clearly constituted a common venture. Plaintiffs had a reasonable expectation of profits "of the type typically associated with an investment," Citizens Bank of Windsor, 737 F.2d at 1495, because they "participat[ed] in earnings resulting from the use of [their] funds...." United Housing Foundation v. Forman, 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975). Finally, the profits in question were derived solely from the efforts of others. Therefore, this Court holds that the agreement which plaintiffs allegedly had with defendants was a security within the meaning of the federal securities laws and that this Court has subject matter jurisdiction over plaintiffs' complaint.

ORDER
Pursuant to the Memorandum filed herein this day,
IT IS HEREBY ORDERED that defendants' motion to dismiss Count II of plaintiffs' complaint be and is granted and plaintiffs' Count II will be dismissed unless, within fourteen (14) days of this date, plaintiffs amend Count II to affirmatively plead compliance with § 13 of the Securities Act of 1933, 15 U.S.C. § 77m.
IT IS FURTHER ORDERED that defendants' motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction be and is denied.