David and Donna AMBLING, et al., Plaintiffs,

v.

**BLACKSTONE CATTLE COMPANY, INC., et al., Defendants.**

No. 86 C 6485.

United States District Court, N.D. Illinois, E.D.

April 28, 1987.

See also 650 F.Supp. 170.

Eugene R. Wedoff, Jenner & Block, Chicago, Ill., on behalf of the plaintiffs.

James D. Scott, pro se.

Michael J. Freed, Michael B. Hyman, Steven A. Kanner, Much Shelist Freed Denenberg Ament & Eiger, P.C., Chicago, Ill., on behalf of defendant Morrison.

James M. Livergood c/o Ober Livergood, pro se.

Donald L. Johnson, Johnson & Schwartz, Chicago, Ill., on behalf of defendant Schlegel.

## MEMORANDUM ORDER

BUA, District Judge.

Plaintiffs brought this action seeking redress for losses they sustained as a result of their investment in Blackstone Cattle Company, Ltd., an Illinois limited partnership. The limited partnership was promoted, formed and managed by the defendants. This action arises under § 12(2) of the Securities Act of 1933, § 10(b) of the Securities Exchange Act of 1934, Rule 10b-5, and several common claims.

Presently before this court is defendants Morrison, Scott and Livergood's motion to dismiss plaintiffs' complaint. Defendants argue that plaintiffs' securities claims are time-barred. In addition, defendants contend that plaintiffs failed to state a § 12(2) claim. Finally, defendants maintain that plaintiffs failed to meet the specificity requirement of Rule 9(b) of the Federal Rules of Civil Procedure. Jurisdiction is based on § 22 of the Securities Act of 1933, 15 U.S.C. § 77v, § 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and §§ 28 U.S.C. 1331 and 1337. For the reasons stated below, this court denies defendants' motion to dismiss plaintiffs' complaint.

### FACTS

All well-pled facts are considered true for the purposes of this motion.

Defendants formed a corporation in 1982 named Blackstone, Inc., for the purpose of serving as the general partner in a limited partnership. The limited partnership was subsequently formed and named Blackstone, Ltd. Before the limited partnership was formed, defendants sold their breeding cattle to the corporation, Blackstone, Inc. That corporation sought prospective buyers to invest in the cattle breeding business as limited partners.

On December 31, 1982, defendants prepared and distributed to plaintiffs an original prospectus which contained financial projections on future cattle sales. Also, plaintiffs received from defendants a revised prospectus on July 1, 1983. Relying on the information and projections contained in these prospectuses, plaintiffs purchased limited partnership interests in Blackstone, Ltd. The limited partnership was formed on September 1, 1983, and operated for almost two and one-half years. During that time plaintiffs did not receive any return on their investments. Plaintiffs filed suit after learning that Blackstone, Ltd. was improperly run. Having invested in the cattle breeding business with high

expectations of profit, plaintiffs soon realized they had purchased a "bum steer."

## DISCUSSION

█ When resolving a motion to dismiss, a court is required to view the facts alleged in the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A motion to dismiss will not be granted merely because the complaint does not state every element necessary for recovery with precision. *Southwest Investments I v. Midland Energy Co.*, 596 F.Supp. 219, 221 (E.D.Mo.1984); 4 Wright & Miller, *Federal Practice and Procedure: Civil § 1216* at 120 (1969). A complaint is sufficient if it "contain[s] allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." 5 Wright § Miller, *Federal Practice and Procedure: Civil § 1216* at 122–23. A complaint should not be dismissed for failure to state a claim unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

### A. *The Statute of Limitations*

#### 1. *Alleging Compliance with § 13 of the Securities Act of 1933*

Count I of the complaint alleges a violation of § 12(2) of the Securities Act of 1933. 15 U.S.C. § 77*l* (2). Section 12 imposes civil liability upon any person who makes an untrue statement of material fact in the offer or sale of a security. Section 13 establishes the statutory limitation period for a § 12(2) violation as one year from the discovery of the violation, but no more than three years after the security was sold. 15 U.S.C. § 77m.

Defendants challenge the sufficiency of the allegations in Count I. Defendants argue that Count I fails to state a claim because it does not affirmatively plead compliance with the applicable statute of limitation. Defendants rely on § 13 of the Securities Act of 1933, 15 U.S.C. § 77m, to support their argument that such an allega-

tion is essential to a cause of action under § 12(2) of the 1933 Act.

█ Section 13 is not an ordinary statute of limitations. The courts have repeatedly held that compliance with the time provisions of § 13 of the Securities Act, in contrast to other limitations statutes, is an essential element of a cognizable § 12(2) claim. Thus, unlike other situations, compliance with the statute must be affirmatively pled in § 12(2) actions and is not merely an affirmative defense to be raised by defendants. *Southwest Investments I v. Midland Energy Co.*, 596 F.Supp. 219, 222 (E.D.Mo.1984). *Adair v. Hunt International Resources Corp.*, 526 F.Supp. 736, 748–49 (N.D.Ill.1981); *McMerty v. Burtness*, 72 F.R.D. 450 (D.Minn.1976).

█ In the instant case, the plaintiffs affirmatively pled facts which indicate that this action has been timely brought under § 12(2). The complaint avers that the sale of securities involved here (interests in a limited partnership for cattle breeding) concluded on September 1, 1983 (¶ 27); that defendants fraudulently concealed the value of the partnership cattle from the investors (¶ 37); that some cattle were sold during the first quarter of 1986 (¶ 33); and that plaintiffs first learned the true value of the cattle during the period April-August 1986 (¶ 37). The complaint was filed shortly thereafter on August 28, 1986. Thus, plaintiffs effectively pled that the complaint was filed within one year of the discovered fraud which was no later than three years after the sale. Therefore, this court concludes that plaintiff complied with § 13 of the Securities Act and stated a cognizable § 12(2) claim.

#### 2. *Filing Counts I and II Within the Three-Year Limitation Period*

Count II alleges a violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and S.E.C. Rule 10b–5. Section 10(b) and Rule 10b–5 provide a person a private right of action to seek damages for fraud or material misstatements in connection with the purchase or sale of a security.

■ The statute of limitation period for a violation of § 10(b) of the 1934 Act is not defined by federal statute. Instead, the limitation period is controlled by the forum state. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976). Illinois is alleged to be the forum state for this action. In Illinois, the three-year limitation period contained in § 13 of the Securities Law of 1953, Ill.Rev.Stat. ch. 121½, ¶ 137.13, subd. D, applies to actions brought under § 10(b) of the 1934 Act and Rule 10b–5. *See Schaefer v. First National Bank of Lincolnwood*, 509 F.2d 1287, 1295 (7th Cir. 1975). Consequently, this court will apply a three-year statute of limitation period to plaintiffs' § 10(b) claim.

Plaintiff's complaint was filed on August 28, 1986. According to the Securities Law of 1953, the statutory limitations period must have begun prior to August 28, 1983, for plaintiffs' § 12(2) and § 10(b) securities claims to be time-barred.

The fundamental dispute revolves around the date the limitation period began running. All parties agree that the limitation period started upon the "sale" of the security. However, the opposing parties present conflicting views of the sale date. Defendants argue that the sale date is the date plaintiffs parted with the final payment necessary to obtain title to their limited partnership interest. This date is prior to September 1, 1983, when the limited partnership was formed. That final payment date is more than three years before the complaint was filed. Therefore, defendants believe that plaintiffs' complaint is time-barred by the three-year limitations period applicable to § 12(2) of the 1933 Act, § 10(b) of the 1934 Act and Rule 10b–5. In contrast, plaintiffs contend that the securities sale was not completed until September 1, 1983, when the partnership was formed and plaintiffs received the limited partnership interest for which they paid. This date is less than three years from the date the complaint was filed and would not time-bar the securities claims.

In *Silverman v. Chicago Ramada Inn, Inc.*, 63 Ill.App.2d 96, 211 N.E.2d 596 (1965), the Illinois Appellate Court was confronted by a similar dispute. The *Silver-man* plaintiffs purchased an interest in a hotel chain from defendants. The first payment was made on March 6, 1959; the last payment was made on October 20, 1959. Upon final payment, plaintiffs received the stock and debentures evidencing their interest in the defendants' corporation. In July 1962, the plaintiffs filed suit based on the alleged sale of unregistered securities.

The parties in *Silverman* could not agree on the date the three-year statute of limitation period began running. Defendants alleged it was the date of the agreement and first payment in March 1959. The plaintiffs insisted that the limitations period started when they made their final payment and received the securities in October 1959.

The *Silverman* court resolved the dispute by first examining the legislative intent behind enacting the legislation in question—"to shield its citizens from unscrupulous stock promoters." *Id.* at 99–100, 211 N.E.2d at 598. The Appellate Court also noted the broad definition of "sale" contained in the law, finding "[i]ts obvious purpose ... to exclude nothing that could possibly be regarded as a sale." *Id.* at 100–101, 211 N.E.2d at 599. On these grounds, the *Silverman* court ruled that all parts of a sales transaction, from offer to title transfer, are actionable.

A purchaser has three years to assert a claim "not only from the date the right first accrues but from the date the sale is completed by the acquisition of legal title to the securities purchased." *Id.* at 101–102, 211 N.E.2d at 599. Taking an expansive view, the *Silverman* court concluded that the limitations period began running on the date plaintiffs made their final payment and received the securities in October 1959. Consequently, the complaint filed in July 1962 was not time-barred.

■ This court feels compelled to follow the holding and rationale enunciated by the *Silverman* court. The controlling facts in *Silverman* are analogous to the facts before the instant court. In *Silverman*, the plaintiffs received a direct and unqualified legal interest in a hotel chain upon making

their final installment payment and receiving the stock certificates. The *Silverman* court believed the date of sale accrues when the buyer acquires legal title to the securities purchased. *Id.* Consequently, the *Silverman* court held that the sale date would include every step toward the completion of the sale. *Id.* The instant court is confronted by a situation similar to that confronted by the *Silverman* court. The instant plaintiffs received a direct and unqualified legal interest in the limited partnership in which they invested when the limited partnership was formed and not when plaintiffs made their final payment. The date of sale accrued when plaintiff acquired legal title to the limited partnership. Although plaintiffs made their final payment before the limited partnership was formed, this court does not believe plaintiffs acquired an unqualified legal interest in the limited partnership until it was formed. Until the formation, plaintiffs merely submitted their investment money to promoters of a "proposed" limited partnership. It was possible that this partnership would never have been formed and their money would have been returned. The promoters were under no obligation to form the partnership. Consequently, this court holds that plaintiff received a direct and unqualified legal interest in the partnership upon its formation and not upon final payment. This formation date is considered the "sale date" and is within the statutory limitation period. This court adopts the *Silverman* court's rationale and implements the legislative intent behind the securities law by shielding citizens from unscroupulous securities sellers.

In *Levine v. Unruh,* 99 Ill.App.2d 94, 240 N.E.2d 521 (1968), the Illinois Appellate Court readdressed the issue of when the limitation period begins to run against a plaintiff who brings a securities claim where the sale is entwined in a series of installment payments. In *Levine,* plaintiff entered into an agreement with the defendant to purchase a part of an interest in an oil lease owned by defendant. The agreement recited that defendant would retroactively relinquish all of his rights to the oil lease sold to plaintiff as of a date prior to the agreement date. In consideration

thereof, the plaintiff made an initial purchase payment when he signed the agreement.

In rejecting the plaintiff's contention that the date of sale was the date of the final installment payment, the *Levine* court found that the statute of limitation began to run on the date the plaintiff executed the agreement and made the initial payment. The court emphasized that the plaintiff acquired an unqualified legal interest in the oil lease on the date of the agreement because plaintiff was entitled to collect all royalties and profits on his portion of the lease after the agreement was entered into. *Id.* at 97, 240 N.E.2d at 524. Therefore, plaintiffs did not need to make the final installment payment to be entitled to share in the profits. Accordingly, the *Levine* court found that the sale date was the agreement date.

The relevant facts in *Levine* differ from those in the instant case. The *Levine* plaintiff and defendant entered into an agreement that entitled plaintiff to collect royalties and profits on his portion of the lease after the contract date. In sum, the *Levine* court emphasized that the "date of sale" was the signing of the agreement since plaintiff acquired an unqualified legal interest in the profits generated from the oil lease as of the date of the agreement. That agreement date was outside of the limitation period. This case is factually distinguishable in light of this court's holding that the instant plaintiffs did not receive an unqualified legal interest in the limited partnership upon final payment but upon its formation. The instant plaintiffs were not entitled to an unqualified legal interest in the limited partnership as of the first installment payment or after the last payment because the partnership had yet to be formed. In contrast, the plaintiffs in *Levine* received a legal interest in certain royalties at the date of signing the agreement.

Recently, the Illinois Appellate Court once more reviewed the definition of "date of sale" for purposes of determining the date upon which the limitation period is triggered for securities claims purchased

pursuant to an installment sale. In *Frantzve v. Joseph*, 150 Ill.App.3d 850, 104 Ill.Dec. 133, 502 N.E.2d 396 (1986), each of the plaintiffs purchased an interest and became a partner in a joint venture agreement for investment in real estate between August 1980 and March 1, 1982. The joint venture soured and financial losses were incurred. On May 17, 1985, the plaintiffs filed a two-count complaint seeking to rescind the agreement based upon fraudulent misrepresentation. The trial court found that the action was barred by the three-year statute of limitation of the Illinois Security Law of 1953. Ill.Rev.Stat. ch. 121½, ¶ 137.1.

On appeal, the court noted that the three-year period did not begin to run until the "date of sale." The court then noted that the date a plaintiff acquires a legal interest in the alleged securities and the date when the rights of the parties to the transaction are fixed constitutes the "date of sale." The *Frantzve* court held that the plaintiffs received a direct and unqualified legal interest in the joint venture on or before March 1, 1982. Consequently, the action was time-barred since the plaintiffs' complaint was filed after March 1, 1985.

The circumstances in *Frantzve* are also factually distinguishable from the instant case. As in *Levine*, the *Frantzve* plaintiffs were entitled to share in any profits realized from their investment in a joint real estate venture upon execution of the agreement and payment of the purchase price. Furthermore, the fact that plaintiffs became responsible for the payment of all maintenance expenses, taxes, and improvements relating to the operation of the joint venture provides further support that plaintiffs acquired a direct and complete legal interest upon execution of the agreement and payment of the purchase price. In contrast, the instant plaintiffs were neither entitled to share in any profits generated from the limited partnership at the time the agreement to buy was signed nor at the time the final installment payment was made. Plaintiffs could not have shared in the profits since the proposed limited partnership had not yet been formed and therefore did not exist. Therefore, the holding in *Frantzve* that the ac-

tion was time-barred does not compel this court to hold that the instant plaintiffs' claim is also time-barred.

In conclusion, the instant court holds that plaintiffs received a direct and unqualified legal interest in the proposed limited partnership when the partnership was formed. Therefore the "date of sale" was not at the time the agreement was signed nor at the time the final payment was made, but at the date the proposed limited partnership was formed. The limited partnership was formed within three years of the plaintiffs filing the complaint. Consequently, plaintiffs' claim is not time-barred by the three-year statute of limitation.

### B. *Section 12(2) of the Securities Act of 1933*

Section 12 states that:

Any person who

. . . . .

(2) offers or sells a security ..., by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading ... shall be liable to the person purchasing such security from him....

15 U.S.C. § 77*l*. This section is designed to allow a purchaser to bring a claim against his immediate seller. *Collins v. Signetics Corp.*, 605 F.2d 110, 113 (3rd Cir.1979).

The threshold question before the instant court is who shall be deemed a seller. Three basic tests have evolved to identify a seller: (1) strict privity; (2) substantial factor/proximate cause, and (3) aiding and abetting. The circuits are split over which test is superior.

The Seventh Circuit has never squarely addressed the issue of who shall be deemed a seller. In *Sanders v. John Nuveen & Co.*, 619 F.2d 1222 (7th Cir.1980), the Seventh Circuit in dicta stated § 12(2) explicitly requires a defendant-seller to be in privi-

ty with a plaintiff-purchaser. The *Sanders* court made this statement adopting the most restrictive construction of seller without addressing the concern that a strict privity requirement permits many persons to escape liability who are in a position to prevent the registration violation or who otherwise may be thought to bear some responsibility for it. Consequently, this court expresses some reservation over whether the Seventh Circuit would embrace the strict privity requirement if it was confronted by the issue. More importantly, the *Sanders* court failed to articulate its rationale for selecting the strict privity test or to explain how the test is to be applied. Consequently, the instant court has been afforded little guidance in determining whether a person is in privity with the purchaser and therefore is deemed a seller.

Judge Rovner of this district addressed the issue of privity in *Beck v. Cantor, Fitzgerald & Co.*, 621 F.Supp. 1547 (N.D. Ill.1985). In *Beck*, Judge Rovner followed the highly restrictive strict privity test to determine whether defendant was a seller. Judge Rovner stated that strict privity requires "title of ownership [to] pass from the seller to the purchaser." *Id.* at 1561. The *Beck* court dismissed a defendant's claim for lack of privity because that defendant's allegedly unlawful conduct did not occur until *after* plaintiff bought his securities. Thus defendant could not have been a seller since no title of ownership passed to plaintiff while the defendant engaged in the unlawful conduct.

Judge Shadur of this district also addressed the issue of whether a defendant qualifies as a seller under § 12(2). In *Excalibur Oil, Inc. v. Sullivan*, 616 F.Supp. 458 (N.D.Ill.1985), Judge Shadur was confronted by a plaintiff-purchaser who sued the defendant-lawyer that represented the company from which plaintiff bought certain oil drilling interests. In *Sullivan*, defendant misrepresented the fact that the interests plaintiff sought to purchase were encumbered. Plaintiff purchased the oil interests and received title from the company defendant represented; defendant had no title in the property and therefore could not pass title to purchaser. Nevertheless,

the *Sullivan* court held that defendant was a "seller" for purposes of § 12(2) liability. The *Sullivan* court did not rely on the strict privity test followed by the *Beck* court and presented in dicta by the Seventh Circuit in *Sanders v. John Nuveen & Co.*, 619 F.2d 1222 (7th Cir.1980). Instead, the *Sullivan* court adopted a broader, more sweeping definition of seller.

The instant court is confronted by a fact pattern that places the defendants somewhere between a seller who passes title and the third-party attorney who never had title, but made false representations regarding the title during the sale process. In the case at bar, defendants are corporate directors who actively solicited plaintiffs to purchase limited partnership interests. If this court adopted the *Sullivan* court's liberal interpretation of seller, then defendants would indisputably be deemed sellers subject to § 12(2) liability. The more interesting question is whether defendants would be deemed sellers under the more restrictive strict privity approach followed by the *Beck* court.

■■■ This court need not decide which test is superior since this court deems defendants sellers under both approaches. This court believes a party can be in privity even though the party does not pass title. The term "seller", for purposes of determining § 12(2) liability, is not limited to one who actually transfers title but extends to those participants who represent the transferor by actively soliciting the sale of the transferor's securities. Under this approach, directors who stay one or two steps removed from the direct selling process would avoid "seller" status under § 12(2). In addition, this court would distinguish between mere drafting of a misleading prospectus and actively soliciting a prospective purchaser to buy the underlying securities.

The instant court's definition of seller is consistent with the results in both *Beck* and *Sullivan*. This court would have reached the same result as the *Beck* court had it been confronted by the same facts. The defendant in *Beck* would not have been deemed a seller because he did not transfer title nor did he act as an agent for the title

transferor by actively soliciting the sale of the transferor's securities. Instead, that defendant's participation did not occur until *after* the *Beck* plaintiff bought his securities. Similarly, this court would have reached the same result as the *Sullivan* court. This court would have deemed the defendant in *Sullivan* a seller because he actively participated in the sale of the securities to the purchaser. That defendant played a pivotal role in the sale process by misrepresenting the fact that the oil interests plaintiff sought to purchase were encumbered. Consequently, this court deems the instant defendants sellers in light of their alleged active solitation of plaintiffs to purchase limited partnership interests in Blackstone, Ltd.

Next, defendants Morrison, Scott, and Livergood argue that Counts I and II fail to specify their role in the alleged fraud or to distinguish between primary and secondary violations of the securities laws. This court finds defendants' arguments unpersuasive.

▮ Plaintiffs specified defendants' role in the alleged fraud. Plaintiffs grouped all the defendants together and outlined the scheme used to defraud plaintiffs. Plaintiffs were not required to plead every act committed by each defendant in implementing the scheme. Plaintiffs sufficiently pled the role of the defendants. The defendants were corporate directors who formed a corporation to sell breeding cattle. Next, these defendants solicited prospective investors to purchase interests in a limited partnership to be formed. That limited partnership was designed so that the corporation was the general partner and the investors were limited partners. This court finds that plaintiffs properly pled the role of defendants.

This court finds that plaintiffs properly pled that defendants were primary violators of § 12(2). Section 12(2) requires a primary violator to have privity between him and the buyer. *Sanders v. John Nuveen & Co.*, 619 F.2d 1222 (7th Cir.1980). This court's earlier discussion has shown that defendants were in privity and were sellers. Consequently, plaintiffs adequately pled that defendants were primary violators of § 12(2).

Similarly, this court finds that plaintiffs properly pled that defendants were also secondary violators who controlled the principal violators. Plaintiffs have alleged that defendants were control persons under § 15 of the 1933 Act and thus secondarily liable for violations of § 12(2). Section 15 provides for secondary liability for

> [e]very person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under Sections 77k or 77*l* (§ 12(2)) ..."

15 U.S.C. § 77*o*.

▮ Plaintiffs need not plead specific affirmative acts demonstrating defendants' control over an alleged principal violator of § 12(2). *See Stern v. American Bankshares Corp.*, 429 F.Supp. 818, 824 (E.D. Wis.1977). Plaintiffs must inform defendants whether defendants are alleged to be primary or secondary violators. In addition, plaintiffs should indicate which primary violator defendants allegedly controlled. Finally, plaintiffs should allege whether defendants are controlling persons as a result of their status or affirmative acts.

Paragraphs 7–9 of the complaint explicitly state that defendants were controlling persons over employees employed by Blackstone, Inc. Defendants controlled these employees by virtue of their ownership of a substantial percentage of Blackstone Inc.'s stock, and their positions as officers and directors. As controllers, defendants were implicitly alleged to be secondary violators of § 12(2). Therefore, plaintiffs properly pled that defendants were secondarily liable under § 12(2).

▮ This court must now turn to plaintiffs' final argument that the § 12(2) claim is not actionable to the extent it imposes aider and abettor liability. This court rejects the aider and abettor theory of liability under § 12(2). This court believes the aiding and abetting doctrine does not apply to § 12(2) claims because it is inconsistent with the language of § 12. This theory

was previously rejected in this district in *Rice v. Windsor Industries, Inc.,* No. 85 C 4196, slip op. at 6 (N.D.Ill. Feb. 26, 1986) [Available on WESTLAW, DCT database].

In sum, this court denies defendants' motion to dismiss plaintiffs' § 12(2) claim. However, this court strikes paragraph 11 of the complaint to the extent it sets forth an aiding and abetting theory.

### C. *Pleading Fraud*

 Federal Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." Rule 9(b) is designed to deter plaintiffs from advancing fraud claims solely for their nuisance or settlement value and to otherwise protect defendants from frivolous charges of fraud. The heightened pleading requirement of Rule 9(b) serves this purpose by requiring a plaintiff to show that he has an actual fraud claim against a defendant as opposed to merely being in search of a potential claim via discovery, and by requiring that plaintiff to give the defendant sufficient notice of the conduct complained of to enable the defendant to prepare a defense. *See D & G Enterprises v. Continental Illinois National Bank and Trust Co.,* 574 F.Supp. 263, 267 (N.D.Ill.1983). Although the rule places stringent pleading requirements on a plaintiff, the Seventh Circuit has indicated that Rule 9 must be read in conjunction with Rule 8. Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Tomera v. Galt,* 511 F.2d 504, 508 (7th Cir.1975). This court is therefore required to strike a balance in order to serve the purposes of Rules 8 and 9.

Defendants argue that plaintiffs' fraud claims should be dismissed because plaintiffs failed to allege fraud with the specificity required by Rule 9(b). Defendants contend that plaintiffs pled mere conclusions. In particular, defendants assert that the complaint fails to specify the time, place, and particular content of any misrepresentation or omission made by defendants.

The Seventh Circuit addressed this issue of Rule 9(b)'s pleading requirements in *Tomera v. Galt,* 511 F.2d 504 (7th Cir. 1975). The *Tomera* plaintiff's cause of action arose out of an alleged securities law violation. Plaintiff alleged that defendants participated in a scheme violating the securities law by either failing to disclose material facts or by making false statements of material facts. Tomera's first amended complaint described the scheme to defraud as follows:

> On September 26, 1969, [defendant] Alfred Rodriguez, then president of Astir, S.A.....sold [plaintiff] several notes and 80 shares of unregistered stock in the mining companies he promoted. [Plaintiff] further alleges defendant informed her that these three companies held valid mine leases in Mexico, were carrying on silver mining operations and processing the ore, and planned to use the funds she invested to further develop the mine property and facilities. In fact, none of the vital information was true.

*Id.* at 508.

The *Tomera* court concluded that the plaintiff's averments satisfied Rule 9(b)'s requirements because the pleadings described the bare bones of the fraudulent scheme. The Seventh Circuit reasoned that the plaintiff's complaint notified defendants of the nature of her Rule 10b–5 securities fraud claim; the complaint presented sufficient details describing the mechanics of the fraudulent scheme, when and where it occurred, and the participants. Finally, the Seventh Circuit noted additional information would be gathered through discovery.

The Seventh Circuit in *Tomera* placed emphasis in two areas regarding the issue of particularity. First, defendants must be adequately notified of the charges against them allowing them to answer. Second, the pleadings must establish enough of a "bare bones" scheme to defraud to exceed conclusory allegations. There is a fine distinction between a faulty, conclusory pleading and one that is consistent with our system of pleading and its emphasis on notice rather than fact or issue pleading.

The instant court must now examine plaintiffs' complaint in light of the guidance provided by the Seventh Circuit. In conjunction, this court notes that a complaint should not be dismissed by a Rule 12(b)(6) motion unless it appears beyond doubt that plaintiffs can prove no set of facts in support of their claims that would entitle them to the relief requested. *See Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972).

This court believes plaintiffs satisfied Rule 9(b)'s requirements. The complaint has alleged fraud with sufficient particularity to enable the defendants to prepare a defense and to answer the complaint. Plaintiff's complaint is not limited to conclusory allegations as defendants would lead this court to believe. Paragraphs 12 through 37 of the complaint describe more than the bare bones of the fraudulent scheme implemented by defendants. Paragraph 12 announced that defendants participated in a scheme to exploit their ownership of certain breeding cattle by (A) selling these cattle at inflated prices to a limited partnership, (B) receiving fees from the limited partnership for services of the cattle, and (C) improving farm property owned by them with investment funds received from the limited partnership. In subsequent paragraphs plaintiffs described the various prospectuses that were issued, the false and misleading financial projections, and the omission of certain statements relating to the fair market value of the cattle. The complaint presents sufficient information which notifies defendants of the conduct with which all the defendants are charged. Such notice enables them to respond adequately to the charges and to prepare a defense. For these reasons, this court denies defendants motion to dismiss pursuant to Rule 9(b).

### D. *Defendant Schlegel's Motion for Reconsideration*

This court denies defendant Schlegel's motion for reconsideration for the reasons stated above. Schlegel chose to ride on the back of the arguments presented by the remaining defendants. Since this court finds Morrison, Scott and Livergood's arguments unpersuasive, this court is compelled to find Schlegel's arguments equally unpersuasive.

### CONCLUSION

This court holds that plaintiffs affirmatively alleged compliance with § 13 of the Securities Act of 1933. In addition, plaintiffs timely filed their securities claims based in § 12(2) of the Securities Act of 1933 and § 10(b) of the Securities Exchange Act of 1934. Next, this court rules that plaintiffs properly stated a cause of action under § 12(2) of the 1933 Act. Additionally, this court finds that plaintiffs satisfied Rule 9(b)'s requirements by alleging fraud with sufficient particularity to enable the defendants to prepare a defense and to answer the complaint. Finally, this court denies defendant Schlegel's motion for reconsideration.

IT IS SO ORDERED.