Frank PALUMBO and Michael
Palumbo, Plaintiffs,

v.

I.M. SIMON & CO., et al., Defendants.

No. 88 C 4282.

United States District Court,
N.D. Illinois, E.D.

Dec. 29, 1988.

Barry T. McNamara, Samuel T. Brkich,
D'Ancona & Pflaum, Chicago, Ill., for plain-
tiffs.

Gregory D. Hoffmann, Gerald P. Grei-
man, Green, Hoffmann & Dankenbring, St.
Louis, Mo., Jeffrey T. Gilbert, Sachnoff,
Weaver & Rubenstein, Ltd., Chicago, Ill.,
for defendants.

## MEMORANDUM ORDER

BUA, District Judge.

Plaintiffs' amended complaint alleges a
violation of the Racketeer Influenced and
Corrupt Organizations Act ("RICO"), 18
U.S.C. §§ 1961–1968 (1982), and asserts
common law claims of fraud, negligence,
negligent supervision, and breach of fiduci-
ary duty. Defendants, arguing that plain-
tiffs' allegations fail to state a RICO claim
and federal jurisdiction is lacking for the
common law claims, have moved to dismiss

the amended complaint in its entirety. For the reasons stated herein, the court finds plaintiffs' RICO allegations sufficient to state a claim only against defendant Mary A. DeMarte. Since DeMarte is the only proper RICO defendant, there is no independent federal jurisdiction over the other defendants. Accordingly, the court dismisses all defendants except DeMarte from each count of the amended complaint.

## I. FACTS [1]

Plaintiffs Frank and Michael Palumbo are unmarried brothers who reside together in Chicago. Over the past 30–40 years, through working, saving, and investing, the brothers managed to accumulate a large sum of money. By late 1982, the Palumbos had amassed over $350,000. In early 1983, the Palumbos began investing in certain bond issues through defendant Mary A. DeMarte, who had acted as one of their investment brokers since at least the mid–1970s. At all times relevant to this litigation,[2] DeMarte was an employee and agent of one of the following two entities, which also are defendants in this action: I.M. Simon & Co., a partnership,[3] and I.M. Simon & Co., Inc., a corporation formed from the partnership in August 1983 (collectively, "Simon").

Over the course of a thirteen-month period, from February 1983 to March 1984, the Palumbos invested a total of $320,000 in various bond issues through DeMarte and Simon. During that time, the Palumbos made nine separate investments in four different types of bonds recommended by DeMarte. Prior to each transaction, DeMarte made certain material misrepresentations and omissions which caused the Palumbos to mistakenly believe that the bonds were of greater value and lesser risk than they actually were. The Palumbos purchased the bonds in reliance on these misrepresentations.

By October 1985, each issuer of the bonds the Palumbos purchased had experienced financial difficulty, filed bankruptcy, and defaulted on the bonds. As a result, to date, the Palumbos have received no payments in principal or interest on any of the bonds, and they do not expect to receive any such payments. In effect, the Palumbos have lost their entire investment.

The Palumbos' amended complaint asserts that defendants' material representations and omissions constitute "fraud in the sale of securities" and "mail fraud," which are included in RICO's broad definition of "racketeering activity." *See* 18 U.S.C. § 1961. The Palumbos claim that the defendants' fraudulent acts, viewed as a whole, constitute a "pattern of racketeering" for which defendants are liable under § 1962(a) and (c) of RICO. In addition, the Palumbos assert various common law claims.

## II. DISCUSSION

### A. *The Palumbos' § 1962(a) Claim: The Causation Requirement Under § 1964 of RICO*

RICO contains four substantive prohibitions which are outlined in 18 U.S.C. § 1962.[4] These prohibitions may be en-

---

**1.** On a motion to dismiss, the court is bound to accept all factual allegations in the amended complaint as true. *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.,* 805 F.2d 732, 733 (7th Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). Therefore, the court disregards the "facts" on which defendants rely that are inconsistent with the Palumbos' allegations.

**2.** The following excerpt is taken from the complaint:
> 22. In late 1982 or early 1983 DeMarte began employment with the defendant, Simon.
> 23. After DeMarte began working for Simon, DeMarte, on or about the last week of January, 1982, mailed ...

Since these allegations are logically inconsistent, the court presumes that ¶ 23 contains a typographical error and should read, "January, 1983."

**3.** The partnership is sued as an entity and each partner or former partner also is sued individually.

**4.** Section 1962 makes it unlawful for any person to: (a) use or invest income derived from a pattern of racketeering in the acquisition of any interest in, the establishment of, or the operation of any enterprise engaged in interstate commerce; (b) acquire or maintain, through a pattern of racketeering, any interest or control in any enterprise engaged in interstate commerce; (c) conduct or participate, through a pattern of racketeering, in the affairs of an enterprise engaged in interstate commerce; (d) conspire to do (a), (b), or (c) above.

forced by private plaintiffs in civil actions. Under § 1964 of RICO, any person injured in his business or property "by reason of" a violation of one of RICO's substantive prohibitions may bring a civil cause of action in federal court to redress his injury. The "by reason of" language in § 1964 operates as a proximate cause requirement which all civil RICO plaintiffs must satisfy to state a claim. *Haroco v. American National Bank & Trust Company of Chicago*, 747 F.2d 384, 398 (7th Cir.1984), *aff'd* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). Therefore, to properly plead a civil RICO claim, a plaintiff must allege: (1) that defendant violated one of the substantive prohibitions in § 1962; and (2) that defendant's violation of § 1962 proximately caused plaintiff's injuries.

 In the instant case, the Palumbos allege that defendants violated § 1962(a). That section provides in part:

> It shall be unlawful for any person who has received income derived ... from a pattern of racketeering activity ... to use or invest ... such income ... in the acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Defendants respond that the Palumbos' RICO claim is deficient even assuming, *arguendo*, that it sets forth a violation of § 1962(a) by defendants. Defendants argue that the Palumbos' claim fails to meet the second requirement of § 1964—the proximate cause requirement—because it lacks any allegation that the Palumbos were injured "by reason of" defendants' § 1962 violation. Specifically, defendants maintain the Palumbos do not claim that they suffered any injury from what § 1962(a) proscribes: the defendants' *use* or *investment* of the money which defendants allegedly derived from a pattern of racketeering. Conversely, the Palumbos contend that they do not need to allege that they were injured "by reason of" defendants' use or investment of the income derived from racketeering activity. The Palumbos' position is that it is sufficient if they allege, as they have, that they were injured "by reason of" the racketeering acts committed by defendants.

Both the Palumbos' and the defendants' positions on this issue have been accepted by district courts within and outside of this district. Several courts have held that a RICO claim based on a violation of § 1962(a) is sufficient where plaintiff alleges he sustained injury "by reason of" the racketeering act or acts committed by the defendant. *See Mid–State Fertilizer Co. v. The Exchange National Bank of Chicago*, 693 F.Supp. 666, 671–72 (N.D.Ill.1988); *Avirgan v. Hull*, 691 F.Supp. 1357, 1362 (S.D.Fla.1988); *Continental Grain Co. v. Pullman Standard, Inc.*, 690 F.Supp. 628, 632–33 (N.D.Ill.1988); *In re National Mortgage Equity Corporation Pool Certificates Securities Litigation*, 682 F.Supp. 1073, 1081–82 (C.D.Cal.1987); *Smith v. MCI Telecommunications Corp.*, 678 F.Supp. 823, 828–29 (D.Kan.1987); *Louisiana Power & Light Co. v. United Gas Pipe Line Co.*, 642 F.Supp. 781, 805–07 (E.D.La.1986). However, the majority position is that in order to satisfy the proximate cause requirement of § 1964, a RICO claim based on § 1962(a) must allege injury suffered "by reason of" the *use* or *investment* of the funds derived from the racketeering activity. *See Rose v. Bartle*, 692 F.Supp. 521, 533 (E.D.Pa.1988); *Leonard v. Shearson Lehman/American Express, Inc.*, 687 F.Supp. 177, 181 (E.D.Pa.1988); *In re Reexplore, Inc., Securities Litigation*, 685 F.Supp. 1132, 1141–42 (N.D.Cal. 1988); *P.M.F. Services, Inc. v. Grady*, 681 F.Supp. 549, 555–56 (N.D.Ill.1988); *Latigo Ventures v. Laventhol & Horwath*, No. 85 C 9584 (N.D.Ill. Nov. 27, 1987) (available on Westlaw 1987 WL 26237); *Waldo v. North American Van Lines, Inc.*, 669 F.Supp. 722, 738 (W.D.Pa.1987); *Omega Construction Co. v. Altman*, 667 F.Supp. 453, 465 (W.D.Mich.1987); *Airlines Reporting Corp. v. Barry*, 666 F.Supp. 1311, 1314–15 (D.Minn.1987); *Gas Reclamation, Inc., Securities Litigation*, 659 F.Supp. 493, 511 (S.D.N.Y.1987); *Prodex, Inc. v. Legg Mason Wood Walker*, No. 86 1950 (E.D.Pa. Feb. 9, 1987) (available on Westlaw 1987 WL 6329); *Donohoe v. Consolidated, Operating & Production Corp.*, No. 86 C 7543

(N.D.Ill. Jan. 8, 1987) (available on Westlaw 1987 WL 5226); *Cincinnati Gas & Electric Co. v. General Electric Co.*, 656 F.Supp. 49, 84 (S.D.Ohio 1986); *Gilbert v. Prudential–Bache Securities, Inc.*, 643 F.Supp. 107, 109–10 (E.D.Pa.1986); *DeMuro v. E.F. Hutton*, 643 F.Supp. 63, 66–67 (S.D.N.Y.1986); *Eastern Corporate Federal Credit Union v. Peat, Marwick, Mitchell & Co.*, 639 F.Supp. 1532, 1537 (D.Mass. 1986); *Heritage Insurance Co. of America v. First National Bank of Cicero*, 629 F.Supp. 1412, 1417 (N.D.Ill.1986); *Whobrey v. Health–Mor, Inc.*, No. 85 C 9451 (N.D.Ill. June 11, 1986) (available on Westlaw 1986 WL 303).

This court finds that the majority position is the rational one. As noted, under § 1964, only persons injured "by reason of" a violation of one of the subsections in § 1962 can bring a civil RICO claim. A violation of subsection (a) of § 1962, which is alleged in the instant case, requires the use or investment of income derived from a pattern of racketeering. The verbs "use" and "invest" describe what acts constitute a violation of § 1962(a). The remaining language in the subsection merely describes the circumstances and conditions under which these acts are prohibited.[5] The use or investment is the crux of the violation. Therefore, in order to allege injury "by reason of" a violation of § 1962(a), a RICO plaintiff must claim he was injured "by reason of" the use or investment of the income derived from racketeering. Undeniably, RICO's plain language mandates that conclusion. *See P.M.F. Services*, 681 F.Supp. at 555–56.

Courts reaching the opposite conclusion have expounded several justifications for doing so. Some of these courts claim that holding otherwise would create an inconsistency in how the proximate cause requirement in § 1964 is applied to the various subsections of § 1962. For example, in *Mid–State Fertilizer, supra,* the court pointed out it is well-established that under

§ 1962(c) it is sufficient for proximate cause purposes if plaintiff alleges he was injured "by reason of" one of the racketeering acts. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495, 105 S.Ct. 3275, 3284, 87 L.Ed.2d 346 (1985). *See also Marshall & Ilsley Trust Co. v. Pate*, 819 F.2d 806, 809–10 (7th Cir.1987). The *Mid–State Fertilizer* court saw no reason why the proximate cause requirement should be different under § 1962(a) than under § 1962(c). *Mid–State Fertilizer*, 693 F.Supp. at 671–72. *See also Louisiana Power & Light*, 642 F.Supp. at 805 n. 21. Therefore, the *Mid–State Fertilizer* court held that an allegation that plaintiff was injured by reason of one racketeering act would be sufficient for proximate cause purposes under § 1962(a).

However, there is a reason why injury by reason of one racketeering act is sufficient under subsection (c) but not under subsection (a). Subsection (c) contains different operative language than subsection (a). Therefore, the "by reason of" language in § 1964 has a different effect when applied to subsection (c) than it does when it is applied to subsection (a). Under § 1962(c), the operative words are "conduct" and "participate." Subsection (c) makes it unlawful for any person to conduct or participate in an enterprise's affairs through a pattern of racketeering. Therefore, to satisfy the proximate cause requirement of § 1964, a RICO plaintiff who bases his claim on a violation of § 1962(c) must allege that he was injured "by reason of" the defendant's *participation* or *conduct* in an enterprise's affairs through a pattern of racketeering. Since the commission of even one racketeering act is sufficient to "conduct" or "participate,"[6] a RICO plaintiff satisfies the proximate cause requirement under subsection (c) where he alleges he was injured "by reason of" one of the racketeering acts. Thus, it is the broad language in subsection (c)—"conduct or

---

5. For example, the remaining language sets forth: *who* cannot use or invest ("any person who ..."); *what* cannot be used or invested ("any income derived ..."); and *how* one is prohibited from using or investing ("in the acquisition of ...").

6. The same is not true under subsection (a). An allegation that defendant committed one racketeering act, or several, is not sufficient to show defendant "used" or "invested" the income derived from the racketeering.

participate"—which permits an allegation that plaintiff was injured by reason of one predicate act to be sufficient for proximate cause purposes under § 1962(c).

Courts have also justified their liberal reading of the proximate cause requirement in § 1962(a) cases by arguing that a "strict" construction of the requirement would eliminate corporate liability under § 1962(a) and (c) and would not serve the Congressional mandate that RICO be "liberally construed to effectuate its remedial purposes." *See Mid–State Fertilizer*, 693 F.Supp. at 672; *Smith*, 678 F.Supp. at 828–29; *Louisiana Power & Light*, 642 F.Supp. at 805–07. However, this court is aware of no Congressional mandate to construe RICO's provisions differently from their plain meaning. In addition, corporations can still be liable under § 1962(a)—if they cause injury by reason of the use or investment of income derived from racketeering —and under § 1962(c)—if they conduct or participate in an enterprise's affairs through a pattern of racketeering. Therefore, the court rejects these justifications. Under RICO's plain language, any civil RICO plaintiff who bases his claim on a violation of § 1962(a) must allege that his injury was proximately caused by the use or investment of the income derived from racketeering.

■ In the instant case, the Palumbos' RICO claim does not meet the proximate cause requirement. Essentially, the Palumbos complain that they were injured by defendants' acts of racketeering, that is, the securities fraud and mail fraud. The Palumbos do not allege that they sustained any injury from defendants' use or investment of the income derived from such racketeering. The only reference in the Palumbos' amended complaint to defendants' use of the income is that defendants used the income to operate the racketeering enterprise. In other words, the Palumbos claim that defendants reinvested the income which they received from their fraud into

their brokerage business. At least one court has held that the reinvestment of income derived from racketeering into the racketeering enterprise is sufficient to satisfy RICO's proximate cause requirement. *See Blue Cross of Western Pennsylvania v. Nardone*, 680 F.Supp. 195, 197–98 (W.D. Pa.1988).

This court, however, finds that the connection between defendants' reinvestment and the Palumbos' injury is too tenuous to consider such reinvestment the proximate cause of the Palumbos' injury. *Cf. Donohoe, supra*, pp. 14–16 on Westlaw ("What defendants may have done afterwards in the 'use' or 'investment' of a plaintiff's funds—even, for example, by continuing to operate the ... enterprise ... really did not injure those who had already invested."). The proximate cause of the Palumbos' injury clearly is defendants' alleged acts of racketeering. Therefore, the Palumbos' RICO claim does not satisfy the requirement that a claim brought under § 1962(a) allege injury "by reason of" the use or investment of the income derived from the racketeering activity. Accordingly, the Palumbos' RICO claim based on § 1962(a) must be dismissed.

### B. *The Palumbos' § 1962(c) Claim: The Pattern of Racketeering Requirement*

■ Although it is unclear from the poorly drafted amended complaint, the Palumbos appear to assert a second RICO claim based on a violation of § 1962(c). As this court has previously discussed, subsection (c) of § 1962 makes it unlawful for any person to conduct or participate, through a pattern of racketeering, in the affairs of an enterprise engaged in interstate commerce. The Palumbos assert their § 1962(c) claim only against DeMarte.[7] DeMarte moves to dismiss this claim on the grounds that it fails to allege a pattern of racketeering.

Under § 1961(5) of RICO, a "pattern of racketeering" requires at least two acts of

---

7. The Palumbos apparently recognize the established rule that where a RICO claim is based on a violation of § 1962(c), a single entity cannot be both the "enterprise" and the "person" liable. · *See Haroco v. American National Bank and Trust Co. of Chicago*, 747 F.2d 384, 401–02 (7th Cir.1984), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). Since the I.M. Simon brokerage firm, both as a partnership and subsequently as a corporation, is alleged to be the "enterprise," neither the corporation nor the partnership can be liable under § 1962(c).

racketeering occurring within a ten-year period. In *Sedima, supra,* the Supreme Court stated in a footnote that while at least two racketeering acts are necessary to constitute a pattern, they are not necessarily sufficient. *Sedima,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. The Court held that a pattern does not exist unless there is "continuity plus relationship" among the racketeering acts. *Id.* Since *Sedima,* federal courts have struggled in attempting to apply the "continuity plus relationship" test. Although the Supreme Court in *Sedima* surmised that the proliferation of RICO lawsuits is due in part to the failure of Congress and the courts to develop a meaningful concept of a "pattern," this court questions whether the "continuity plus relationship" test has stemmed the avalanche of RICO suits or significantly clarified the pattern concept. Nevertheless, the "continuity plus relationship" test has become the accepted method for determining whether a pattern of racketeering has been alleged.

In this circuit, the test was formally adopted in *Morgan v. Bank of Waukegan,* 804 F.2d 970 (7th Cir.1986). Therein, the court recognized that applying the test is not an easy task. The court stated:

> Requiring both continuity plus relationship among predicate acts for the pattern requirement to be met is a sound theoretical concept that is not easily accomplished in practice. This is because the terms "continuity" and "relationship" are somewhat at odds with one another. Relationship implies that the predicate acts were committed somewhat closely in time to one another, involve the same victim, or involve the same type of misconduct. Continuity, on the other hand, would embrace predicate acts occurring at different points in time or involving different victims. To focus excessively on either continuity or relationship effectively negates the remaining prong.

*Id.* at 975. In an attempt to refine and clarify the test, the *Morgan* court identified the following factors as relevant in considering whether a pattern of racketeering exists: the number and variety of racketeering acts and the length of time over which they were committed, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries. *Id.* Consideration of all of these factors, the court acknowledged, creates a "factually-oriented standard" which is "less than precise." *Id.* at 977. However, the court found such an approach more palatable than any inflexible rule.

In more recent decisions, the Seventh Circuit has continued to analyze pattern of racketeering issues in fact-specific terms based on the relevant factors outlined in *Morgan. See, e.g., Brandt v. Schal Associates, Inc.,* 854 F.2d 948, 952 (7th Cir. 1988); *SK Hand Tool Corporation v. Dresser Industries, Inc.,* 852 F.2d 936, 940 (7th Cir.1988); *Jones v. Lampe,* 845 F.2d 755, 757 (7th Cir.1988); *Medical Emergency Service Associates v. Foulke,* 844 F.2d 391, 395 (7th Cir.1988). Using this analysis, numerous Seventh Circuit decisions have held that a pattern of racketeering does not exist where multiple fraudulent acts are committed in furtherance of a single episode of fraud that involves one victim and relates to one basic transaction. *See Brandt,* 854 F.2d at 952–54; *SK Hand Tool,* 852 F.2d at 940; *Medical Emergency,* 844 F.2d at 396–98; *Tellis v. U.S. Fidelity & Guaranty Co.,* 826 F.2d 477, 479 (7th Cir.1987); *Skycom Corp. v. Telstar Corp.,* 813 F.2d 810, 818 (7th Cir.1987); *Marks v. Pannell Kerr Forster,* 811 F.2d 1108, 1112 (7th Cir.1987); *Elliott v. Chicago Motor Club Ins.,* 809 F.2d 347, 350 (7th Cir.1986).

The instant case, however, is different from those cases. Here, the factual circumstances alleged in the Palumbos' complaint are not properly characterized as "one episode of fraud," and the multiple racketeering acts allegedly committed by defendants do not relate to "one basic transaction." Instead, the Palumbos' allegations set forth a series of transactions, each of which amounted to a separate episode of fraud. The court finds the facts of this case more analogous to those in *Liquid Air Corporation v. Rogers,* 834 F.2d 1297 (7th Cir.1987), and *Illinois Department of Revenue v. Phillips,* 771 F.2d 312 (7th Cir.1985), wherein the Seventh Circuit found the allegations sufficient to establish a pattern. In *Liquid Air,* defendants de-

frauded plaintiff Liquid Air Corporation by bribing one of Liquid Air's employees. Defendants caused the employee to prepare false shipping orders and invoices on nineteen separate occasions so that it appeared defendants had returned compressed gas cylinders which defendants had been leasing from Liquid Air. In reality, defendants had improperly retained the cylinders. The court held that on each of the nineteen occasions when the employee prepared a false invoice, Liquid Air had sustained a distinct injury. *Id.* at 1304–05. The court found that even though defendants had effectuated a single fraudulent scheme on a single victim, they had committed a pattern of racketeering. *Id.* The court stated, "We find that the repeated infliction of economic injury upon a single victim of a single scheme is sufficient to establish a pattern of racketeering." *Id.* at 1305. Similarly, in *Phillips*, the court found that the Illinois Department of Revenue had sufficiently pled a pattern of racketeering where it alleged that defendant had mailed nine separate fraudulent state sales tax returns to the state over a nine-month period. *Phillips*, 771 F.2d at 313. When later interpreting its *Phillips* decision, the Seventh Circuit explained in *Morgan* that "each tax return was a separate lie and resulted in a separate underpayment." *Morgan*, 804 F.2d at 976.

Likewise, in the instant case, the Palumbos' allegations set forth a series of transactions, each of which causes a separate injury. The Palumbos allege that DeMarte committed fraudulent acts prior to each of the nine separate bond transactions they executed through DeMarte. As a result of each fraud, the Palumbos sustained a distinct injury from each transaction: the amount of each investment. Undeniably, the fraudulent acts allegedly committed by the defendants are sufficiently related to meet the "relationship" prong of the "continuity plus relationship" test. The acts were inflicted upon the same victim, involved the same type of fraud, and were committed somewhat closely in time. In addition, the acts also are sufficiently separate in time and place to meet the "continuity" prong of the test. They related to nine separate transactions, caused nine distinct

injuries, and occurred over a thirteen-month span. Therefore, this court finds the Palumbos' allegations sufficient to allege a pattern of racketeering. Accordingly, the court denies DeMarte's motion to dismiss the Palumbos' § 1962(c)–based RICO claim.

## C. The Palumbos' Common Law Claims: Pendent Party Jurisdiction

This court's determination that the Palumbos' allegations are insufficient to state a RICO claim against all defendants except DeMarte creates a third issue to be resolved on defendants' motion to dismiss. Since DeMarte is the only remaining RICO defendant, can and/or should the court retain jurisdiction over the Palumbos' state law claims against the other defendants? This question raises the issue of pendent party jurisdiction. Pendent parties are defendants over which there is no independent basis of federal jurisdiction, but against which plaintiff has asserted a state law claim which is related to a jurisdictionally sufficient claim against another party. Given the outcome of the Palumbos' RICO claims, all defendants but DeMarte are pendent parties in this action.

In order to establish jurisdiction over pendent parties, a two-prong test must be satisfied. *Zabkowicz v. West Bend Co.*, 789 F.2d 540, 546 (7th Cir.1986). First, the requirements of Article III of the Constitution for the exercise of federal judicial power must be fulfilled. Second, relevant statutory limitations must not preclude the exercise of pendent jurisdiction over the particular nonfederal claim in question. *Id.* The court finds that both prongs of the test are met in this case. The constitutional prong is satisfied where there is a federal claim which is of sufficient substance to confer jurisdiction and the federal and state claims are derived from a common nucleus of operative fact. *Id.* Here, the Palumbos' RICO claim is sufficient to confer jurisdiction, and the Palumbos' state law claims arise out of the same operative facts as the RICO claim.

The statutory prong of the test is met if it is determined that Congress has not ex-

pressly or by implication negated the exercise of jurisdiction over the nonfederal claim. *Id.* To make this determination, the court looks to the specific statute which confers jurisdiction over the federal claim. This court, like the court in *Nicolazzi v. Colombik*, 670 F.Supp. 823, 826 (N.D.Ill. 1987), finds nothing in the text or legislative history of RICO which indicates a Congressional intent to preclude a RICO plaintiff from bringing the state law claims asserted by the Palumbos. Therefore, the second prong of the test is also satisfied.

Since both prongs of the test are met, this court has the power to hear the Palumbos' state law claims against all defendants besides DeMarte[8] under the doctrine of pendent party jurisdiction. However, the exercise of pendent party jurisdiction is not a right belonging to any plaintiff. The decision to exercise pendent party jurisdiction remains within this court's discretion. *Zabkowicz*, 789 F.2d at 546. In making that decision, the court should consider whether the exercise of pendent party jurisdiction would be fair to the litigants. *Id.* at 548.

This court finds that the exercise of pendent party jurisdiction is not appropriate in the instant case because it would result in unfairness. *See Nicolazzi*, 670 F.Supp. at 826. If the Palumbos were permitted to try their RICO claim against DeMarte with their state law claims against the other defendants, it is likely that confusion of the issues and prejudice would occur. The other defendants are DeMarte's employers. In addition, all of the underlying facts necessary to prove the RICO violation and the state law claims are the same. Moreover, three of the four state law claims—negligence, fraud, and breach of fiduciary duty —are asserted against all defendants. In such a case, the likelihood of confusion and prejudice is high. Despite this court's determination that DeMarte's employers cannot be held liable under RICO, the intertwining among the facts and claims may cause DeMarte's employers to be improperly associated with the alleged RICO violation. Since RICO's harsh penalties include treble damages and attorneys' fees, any such confusion would be especially damaging to DeMarte's employers. Therefore, the court finds that it would be inappropriate to retain jurisdiction over the state law claims against DeMarte's employers.

### III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. The court hereby dismisses all defendants from this action except Mary A. DeMarte.

IT IS SO ORDERED.

---

8. The state law claims against DeMarte are pendent claims over which the court retains jurisdiction.