Paul L. CRAIG, Ph.D., Plaintiff,

v.

FIRST AMERICAN CAPITAL RE-
SOURCES, INC., Mark Anthony,
and Carl Gerard Bitler, Defendants.

No. 89 C 2149.

United States District Court,
N.D. Illinois, E.D.

June 26, 1990.

Ronald P. Kane, Barbara Young, Siegan, Barbakoff & Gomsberg, Chicago, Ill., for plaintiff.

Roger J. McFadden, Marshall L. Blankenship, Schuyler, Roche & Zwirner, Chicago, Ill., for defendant Bitler.

## ORDER

BUA, District Judge.

Plaintiff Dr. Paul L. Craig filed this action alleging that a securities brokerage firm, defendant First American Capital Resources, Inc. ("First American"), and two of its employees, defendants Mark Anthony and Carl Bitler, committed fraud and engaged in other misconduct in handling various securities transactions on his behalf. Bitler now moves to dismiss all of the claims asserted against him. For the reasons stated herein, Bitler's motion to dismiss is granted as to Counts I–V and VII; the motion is denied as to Count VI.

## FACTS [1]

Craig's involvement with First American began in about September 1987. Around that time, Craig, a resident of Anchorage, Alaska, became aware of a seafood processing company called Seafood From Alaska, Inc. ("SFA"). When Craig contacted SFA to inquire about investing in the company, he was directed to Anthony. Anthony had engineered the initial public offering of SFA stock while working for Chicago-based First American. Upon being con-

---

1. For the purpose of deciding Bitler's motion to dismiss, all the well-pleaded allegations in Craig's complaint must be accepted as true. *Gregory v. Nunn,* 895 F.2d 413, 414 (7th Cir. 1990); *Ed Miniat, Inc. v. Globe Life Insurance Group, Inc.,* 805 F.2d 732, 733 (7th Cir.1986), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987).

tacted by Craig, Anthony persuaded Craig to invest in SFA through First American.

Over the course of the next year, Anthony, acting as First American's agent, made numerous misrepresentations to Craig, inducing Craig into several other investments in which he suffered substantial monetary losses. Anthony also executed a series of unauthorized trades on Craig's accounts at First American, causing Craig to suffer further monetary losses. On November 3, 1988, after Craig became aware of the unauthorized trading on his accounts, he contacted First American to complain. At that time, Craig was informed that Anthony no longer worked for First American.

On November 8, 1988, Craig had a telephone conversation with Bitler, who identified himself as the new president of First American. During that conversation, Craig advised Bitler of the unauthorized trading which had taken place on his accounts at First American. Bitler assured Craig that misrepresentations had been made to him by Anthony and that the unauthorized transactions which Anthony had executed would be "reversed." Approximately two weeks later, Craig had another conversation with Bitler, during which Bitler represented that he had reversed Anthony's unauthorized trades as he had promised. Bitler stated that written confirmations evidencing the fact that the trades had been reversed "were in the mail" and that slow delivery of mail to Alaska was the reason Craig had not yet received the confirmations. Craig subsequently learned that the unauthorized trades had not been reversed. He then filed this action.

The first three counts of Craig's seven-count complaint allege violations of federal securities laws. Count I alleges that defendants violated § 12(2) of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. § 77l (2); Count II alleges that defendants com-mitted securities fraud in violation of § 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b), and Securities Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5; Count III asserts claims for "control person" liability pursuant to § 15 of the 1933 Act, 15 U.S.C. § 77o, and § 20 of the 1934 Act, 15 U.S.C. § 78t. Count IV asserts a claim under the. Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Finally, Counts V–VII allege state law claims for breach of fiduciary duty, common law fraud, and negligent misrepresentation. Bitler's motion seeks his dismissal from each count.

## DISCUSSION

### I. Count I: Violation of § 12(2) of the 1933 Act

Craig alleges three alternative theories for holding Bitler liable under § 12(2) of the 1933 Act. He claims that Bitler is liable for either committing a direct violation of § 12(2), entering into a conspiracy to violate § 12(2), or aiding and abetting in a violation of § 12(2).

### A. Direct Violation

■ By its express terms, § 12(2) limits liability to "sellers" and "offerors" of securities.[2] The Seventh Circuit recently pointed out that many district courts in this circuit, relying on dicta in *Sanders v. John Nuveen & Co.*, 619 F.2d 1222 (7th Cir. 1980), *cert. denied,* 450 U.S. 1005, 101 S.Ct. 1719, 68 L.Ed.2d 210 (1981), have held that to be liable as a "seller" or "offeror" under § 12(2), the defendant must be in privity with the plaintiff-purchaser. *See Schlifke v. Seafirst Corp.*, 866 F.2d 935, 939 (7th Cir.1989) (citing *Steinberg v. Illinois Co.*, 659 F.Supp. 58, 60 (N.D.Ill.1987) (collecting cases), and *Kennedy v. Nicastro*, 503 F.Supp. 1116, 1118 (N.D.Ill.1980)). This

**2.** Section 12(2) states:

Any person who—

 (2) offers or sells a security ... by means of a prospectus or oral communication, which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading ..., and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission ... shall be liable to the person purchasing such security from him....

court, however, has never embraced a strict privity requirement for § 12(2). In fact, in *Ambling v. Blackstone Cattle Co., Inc.*, 658 F.Supp. 1459 (N.D.Ill.1987), this court expressed reservations about whether § 12(2) really requires strict privity between the plaintiff-purchaser and the defendant-seller and doubted whether the Seventh Circuit would adopt such an approach when called upon to actually decide the issue. *Id.* at 1465–66.

Subsequent to *Ambling*, in *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988), the Supreme Court refused to adopt a strict privity requirement for cases alleging violations of § 12(1) of the 1933 Act. The Seventh Circuit then stated, in *Schlifke*, "The language in *Pinter v. Dahl*, coupled with prevailing case law in other circuits, seems to undermine the continuing viability of the strict privity concept under section 12(2)." 866 F.2d at 940. The *Schlifke* court, however, refused to adopt a specific test for determining who can be a "seller" or "offeror" under § 12(2). Instead, the court found that under any of the various tests employed for determining who is a "seller" under § 12(2)—including the "proximate cause" test and "substantial factor test" [3]—the defendant in *Schlifke* was not a "seller" of securities. 866 F.2d at 940–41.

As in *Schlifke*, this court need not determine the precise parameters of the "offers or sells" language in § 12(2), for under any reasonable definition of "offeror" or "seller," Craig's claim that Bitler is liable for a direct violation of § 12(2) as a seller of securities must fail. The complaint does not allege that Bitler participated in soliciting Craig's purchase of securities or that Bitler even communicated with Craig before he purchased securities. Nor does the complaint allege that Bitler took any action at First American to facilitate Craig's securities transactions. The only action allegedly taken by Bitler in connection with Craig's transactions was his misrepresentations concerning the reversal of certain trades; those misrepresentations were allegedly made by Bitler sometime *after*

Craig's securities transactions had already been completed. Therefore, in no way can Bitler be considered a proximate cause or a "substantial factor" in causing Craig's transactions to take place. *See Beck v. Cantor, Fitzgerald & Co., Inc.*, 621 F.Supp. 1547, 1561–62 (N.D.Ill.1985) ("[T]here is no question that under any stretch of the term, 'strict privity' does not apply to [defendant] whose conduct did not occur until well after the plaintiff bought his ... stock.... Indeed, ... even under the 'substantial factor' and 'transaction causation' tests enunciated by other circuits which have not required 'strict privity' under Section 12(2), [defendant] did not have both prior and significant involvement in the events leading to and causing the sales transaction.") As a result, Bitler is not liable as a direct seller of securities under § 12(2).

**B. Aiding and Abetting**

▮ In addition to questioning "the continuing viability of the strict privity concept," the *Schlifke* court spoke disapprovingly of the doctrine of aiding and abetting liability under § 12(2). Noting that this circuit has never recognized aiding and abetting liability under § 12(2), the court stated: "[N]otions of aiding and abetting liability would be inconsistent with the intent and language of the statutory provision which expressly limits to offerors and sellers the categories of persons who may be sued." 866 F.2d at 942.

Craig correctly points out that *Schlifke* did not totally foreclose the possibility of aiding and abetting liability. The *Schlifke* court narrowly tailored its holding to the facts of that case, stating, "[I]n the absence of a showing that the [defendant] Bank acted with scienter, we see no reason at this time to imply a right of action for aiding and abetting under section 12(2)." *Id.* However, in light of the Seventh Circuit's recognition that aiding and abetting liability is discordant with the language and intent of § 12(2), this court is not persuaded to retreat from its prior ruling in *Ambling* rejecting the notion of aider and

---

**3.** For a discussion of the various tests employed, see *Schlifke*, 866 F.2d at 940.

abettor liability under § 12(2). *See* 658 F.Supp. at 1467.[4] Moreover, even if it were appropriate to recognize aider and abettor liability in some circumstances, this case would not be one of them. As noted above, Craig's complaint does not contain any allegations that Bitler facilitated the offer or sale of a security; Bitler did not even have any involvement with Craig until after Craig's securities purchased had already been effectuated through Anthony. Accordingly, Bitler cannot be liable as an aider or abetter under § 12(2).

### C. Conspiracy

■■■■ Craig's final theory under § 12(2) is that Bitler was part of a conspiracy. However, in order to state a claim for conspiracy, "a plaintiff must allege the agreement of each defendant to the operation of the conspiracy." *First Interstate Bank of Nevada v. Chapman and Cutler*, 837 F.2d 775, 780 (7th Cir.1988). Craig has not alleged that Bitler entered into any agreement to violate § 12(2); nor has he alleged any facts from which such an agreement may be inferred. He merely claims that at all times relevant to this action Bitler was an officer and director of First American and that by virtue of that position Bitler either knew or should have known of Anthony's misrepresentations and unauthorized transactions. These allegations, even when read in the light most favorable to Craig, are simply insufficient to state a claim for conspiracy. *See Maloney v. Washington*, 584 F.Supp. 1263, 1266 (N.D.Ill.1984) (allegations of conspiracy must be supported by facts and cannot withstand motion to dismiss if they are

merely conclusory). Accordingly, Craig's § 12(2) conspiracy claim against Bitler, as well as his claims against Bitler for a direct violation of § 12(2) and aiding and abetting under § 12(2), must be dismissed.

### II. Count II: Violation of § 10b of the 1934 Act and Rule 10b–5

Section 10(b) and Rule 10b–5 make it unlawful for any person to make an untrue statement of material fact or to omit a statement of material fact in connection with the purchase or sale of a security.[5] Craig asserts that Bitler violated § 10(b) and Rule 10b–5 in the same three ways that Bitler allegedly violated § 12(2): as a direct violator, as an aider or abettor, and as a conspirator.

### A. Direct Violation

■■■■ To satisfy the "in connection with" language of § 10(b) and Rule 10b–5, a plaintiff must show a causal connection between his decision to buy or sell securities and the defendant's fraudulent conduct. *See Schlifke*, 866 F.2d at 943; *Rowe v. Maremont Corp.*, 850 F.2d 1226, 1233 (7th Cir.1988). As this court has already discussed, in the instant case Bitler's statements to Craig did not occur until after Anthony had executed Craig's securities transactions. Therefore, in no way can Bitler's representations be construed as a cause of Craig's purchases of securities through First American.

Craig argues that Bitler's statements are actionable even though they occurred after the securities purchases. Citing *Securities*

---

**4.** This court's position is consistent with that of the Second and Third Circuits, both of which have rejected aider and abettor liability since the Supreme Court's decision in *Pinter v. Dahl*, *supra*. *See Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628, 636–37 (3d Cir.1989); *Royal American Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1017 (2d Cir.1989).

**5.** Rule 10b–5, promulgated pursuant to § 10(b), provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

*and Exchange Commission v. Holschuh,* 694 F.2d 130 (7th Cir.1982), Craig claims that "post-purchase representations may still be actionable if they are part of an overall scheme to defraud by concealing the fraud and preventing its detection." *Holschuh,* however, does not stand for that proposition. In fact, the *Holschuh* court suggested that post-purchase representations are *not* actionable. The court stated:

> [Defendant's argument] that a violation of the securities laws may not be based on events occurring after a sale has been completed, because such events could not have influenced the decisions of investors and cannot satisfy the requirement of being "in connection with the purchase or sale of any security[,]" ... might have merit were it true that the district court predicated its finding of fraud solely upon [defendant's] post-sale activities.

*Id.* at 143. The *Holschuh* court expressly held that it was the defendant's conduct *prior* to the sale which satisfied the "in connection with" requirement, and that the defendant's conduct after the sale was relevant only because it was evidence of the defendant's overall fraudulent scheme. *Id.* at 143–44. The instant case stands in stark contrast to *Holschuh* because Craig does not allege that Bitler made any pre-sale misrepresentations. Thus, *Holschuh* provides no support for Craig's claim that Bitler's post-sale representations are actionable under Rule 10b–5.

■ Craig also argues that even if Bitler's statements were not part of the fraud which caused his securities purchases, Bitler's statements were still "in connection with" the sale of securities because the statements pertained to the reversal of the unauthorized transactions which had been executed on his account. According to Craig, "Certainly the reversal of trades would constitute a sale within the meaning of Section 10(b)." However, although Bitler's statements were made in relation to a proposed securities transaction—the reversal of the unauthorized trades—Bitler's representations did not cause Craig to buy or sell securities. At most, the statements caused Craig to retain the securities he had already purchased. The law is clear that

claims for wrongful retention of securities are not actionable under § 10(b). *See O'Brien v. Continental Illinois Nat'l Bank and Trust Co.,* 593 F.2d 54, 58 (7th Cir.1979). Therefore, Craig cannot base his 10b–5 claim on Bitler's statements regarding the reversal of Anthony's unauthorized trades. As a result, there is no foundation for Craig's claim that Bitler committed a direct violation of Rule 10b–5.

### B. Aiding and Abetting

■ To state a claim for aider and abettor liability under Rule 10b–5, "the plaintiff must show that the alleged aider and abettor committed one of the manipulative or deceptive acts proscribed under section 10(b) and Rule 10b–5 with the same degree of scienter that is required for primary liability." *Schlifke,* 866 F.2d at 947. The plaintiff must also show "substantial assistance by the aider and abettor in the perpetration of the primary violation." *Id.*

■ In the instant case, Craig has failed to allege that Bitler committed any manipulative or deceptive act proscribed by Rule 10b–5, since, as discussed above, none of the representations allegedly made by Bitler were "in connection with" the purchase or sale of any security. Moreover, Craig's complaint is barren of any allegation that Bitler provided "substantial assistance" to Anthony in Anthony's alleged violation of Rule 10b–5. Therefore, Bitler cannot be held liable under an aider or abettor theory.

### C. Conspiracy

■ As discussed in Part I of this opinion, in order to state a claim for conspiracy, plaintiff must allege facts showing that defendant agreed to participate in the scheme, or facts from which such an agreement may be inferred. *See First Interstate Bank,* 837 F.2d at 780 & n. 5. The complaint in this case contains no such allegations with respect to Bitler. Therefore, Craig's Rule 10b–5 conspiracy claim against Bitler, like his § 12(2) conspiracy claim against Bitler, has no foundation. Count II must be dismissed as to Bitler.

### III. Violation of § 15 of the 1933 Act of § 20(a) of the 1934 Act

■ Section 15 of the 1933 Act and Section 20(a) of the 1934 Act provide liability for individuals who act as "control persons" in violating securities laws.[6] Craig alleges that Bitler is liable as a control person because he was an officer and a director of First American and, as such, he controlled the acts of First American. To hold Bitler liable as a control person, however, it is insufficient for Craig to simply allege that Bitler was an officer of First American; Craig must allege that Bitler had "potential for control over the specific activity upon which the primary violation [of securities laws] is predicated." *Schlifke*, 866 F.2d at 949–50. *See also Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 494 (7th Cir.1986) ("control" under § 15 or § 20 means the practical ability to direct the actions of those who sell the securities). In the instant case, Anthony's alleged fraudulent misrepresentations and unauthorized trading constitute the specific activity on which the primary violation of security laws is based. Craig's complaint, however, is void of any allegation that Bitler had specific control over Anthony's culpable acts. Craig only generally alleges that Bitler controlled the acts of First American by virtue of his position with the company. Under *Schlifke*, that allegation is insufficient to state a claim for control person liability under either the 1933 Act or the 1934 Act. *See e.g., Pershing v. Sirmer*,

No. 89 C 2239, 1989 WL 165155 (N.D.Ill. December 27, 1989) (available on Lexis and Westlaw) (dismissing claim for control person liability where plaintiff failed to allege facts showing that defendant had the ability to exercise control over the fraudulent securities transaction at issue). Therefore, Bitler's motion to dismiss Count III as it relates to him must be granted.[7]

### IV. Count IV: RICO

■ In Count IV, Craig claims that defendants are liable under § 1962(a) of RICO. That provision states, in relevant part:

> It shall be unlawful for any person who has received income derived ... from a pattern of racketeering activity ... to use or invest ... such income ... in the acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a). In *Palumbo v. I.M. Simon & Co.*, 701 F.Supp. 1407 (N.D.Ill. 1988), this court held, in line with the majority of courts, that in order to state a claim under § 1962(a), the plaintiff cannot simply allege that he was injured by the defendant's racketeering acts; plaintiff must allege that he suffered an injury "by reason of" the defendant's *use* or *investment* of the income derived from the racketeering activity. *Id.* at 1408–11. In the instant case, Craig concedes the complaint

---

**6.** Section 20(a) of the 1934 Act provides:
 Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person ... is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.
 15 U.S.C. § 78t(a).
 Section 15 of the 1933 Act provides:
 Every person who ... controls any person liable under sections 77k or 77*l* of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable

ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.
 15 U.S.C. § 77*o*.

**7.** Count III also alleges that "Defendants" are liable as control persons "pursuant to the Doctrine of Respondeat Superior." Although it is unclear from the complaint which defendants Craig believes are liable under the doctrine of *respondeat superior*, the court does not read Craig's reference to the doctrine as pertaining to Craig. In his memorandum, Craig does not attempt to apply the doctrine to Bitler. Moreover, the complaint alleges that both Anthony and Bitler were agents of First American, not that Anthony was an agent of Bitler. Therefore, there is no basis for *respondeat superior* liability against Bitler.

does not allege that he sustained an injury by reason of the defendants' use or investment of the income derived from the alleged pattern of racketeering; he alleges only that he was injured by the racketeering acts. Therefore, under *Palumbo,* Craig's RICO claim must be dismissed.

Craig argues that this court should reconsider its *Palumbo* decision. However, as this court pointed out in *Grove Fresh Distributors, Inc. v. Flavor Fresh Foods, Inc.,* 720 F.Supp. 714, 717 & n. 1 (N.D.Ill. 1989), since this court's ruling in *Palumbo* two circuit courts have interpreted the proximate cause requirement of § 1962(a) in line with *Palumbo* and the majority of courts. *See Rose v. Bartle,* 871 F.2d 331, 357–58 (3d Cir.1989); *Grider v. Texas Oil and Gas Corp.,* 868 F.2d 1147, 1149 (10th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989). Moreover, this court has not found any circuit decision taking the contrary position, and the Seventh Circuit has still not been called upon to decide the issue. *See Mid–State Fertilizer v. Exchange Nat'l Bank of Chicago,* 877 F.2d 1333, 1340–41 n. 1 (7th Cir.1989) (Ripple, J., concurring) (noting that the Seventh Circuit has not decided the proximate cause issue under § 1962(a)). Therefore, the court sees no reason to retreat from its prior ruling in *Palumbo.* In addition, since Craig's allegations fail to meet the proximate requirement for a § 1962(a) claim as set forth in *Palumbo,* the court sees no reason to allow Craig to maintain his RICO claim against any of the defendants, even in the absence of a motion to dismiss from First American or Anthony. Accordingly, Count IV is dismissed in its entirety.

### V. State Law Claims

#### A. Pendent Party Jurisdiction

Bitler also moves to dismiss the state law claims against him on the grounds that they fail to state a claim upon which relief may be granted. Before discussing the merits of Craig's state law claims, however, the court confronts a jurisdictional issue not discussed in the parties' briefs: pendent party jurisdiction. Craig bases this action on federal claim jurisdiction, not diversity jurisdiction. Therefore, in light of this court's ruling that the complaint does not state a federal claim against Bitler, there is no independent basis for exercising federal jurisdiction over Bitler, even if Craig's state law claims against Bitler are meritorious. The only way the court can hear Craig's state law claims against Bitler is if it exercises pendent party jurisdiction.

 In order to exercise pendent party jurisdiction, a two-part test must be satisfied. *See Carter v. Dixon,* 727 F.Supp. 478, 479 (N.D.Ill.1990) (citing *Huffman v. Hains,* 865 F.2d 920, 922 (7th Cir. 1989) and *Zabkowicz v. West Bend Co.,* 789 F.2d 540, 546 (7th Cir.1986)). First, the constitutional power to exercise such jurisdiction must exist. This part of the test is satisfied where, as here, "the federal claim [against another defendant] is not frivolous, the federal and state claims 'derive from the same nucleus of operative fact', and the federal and state claims are the kind that plaintiff 'would ordinarily be expected to try ... in one judicial proceeding.'" *Carter,* 727 F.Supp. at 479 (citing *Huffman,* 865 F.2d at 922). Second, Congress must not have limited the court's power to exercise pendent party jurisdiction in the particular statutory provision conferring federal jurisdiction on the case. *Id.* In the instant case, this part of the test is met since the court finds nothing in the federal securities laws preventing the exercise of pendent party jurisdiction. Therefore, the court has the power to exercise pendent party jurisdiction in this case.

Moreover, the court finds that the exercise of pendent party jurisdiction is appropriate under the facts present here. Due to the relatedness of Craig's state law claims and his federal securities law claims, litigating all of Craig's claims at the same time and in the same forum will undoubtedly preserve judicial time and resources. *See Carter,* 727 F.Supp. at 480. Hearing all of the claims together will also be more convenient for the parties, who will avoid shuffling back and forth between state and federal court to resolve the issues presented in Craig's complaint. *Id.* Therefore,

the court will exercise pendent party jurisdiction over Craig's common law fraud claim which, as discussed below, is the only state law claim against Bitler which survives Bitler's motion to dismiss.

**B. Count V: Breach of Fiduciary Duty**

 Count V of the complaint alleges that by virtue of his relationship with Craig, Bitler is liable for breach of fiduciary duty. Under Illinois law, most business relationships do not of themselves create fiduciary relationships. *See Schuppenhauer v. Peoples Gas Light and Coke Co.*, 30 Ill.App.3d 607, 613, 332 N.E.2d 583, 589 (1975) ("The fact that business transactions are conducted does not justify an inference of a fiduciary obligation."); *see also BA Mortgage and International Realty Corp. v. American Nat'l Bank & Trust Co. of Chicago*, 706 F.Supp. 1364, 1372 (N.D.Ill. 1989); *Seaboard Seed Co. v. Bemis Co.*, 632 F.Supp. 1133, 1136 (N.D.Ill.1986). In the absence of a *per se* fiduciary relationship—such as attorney/client, guardian/ward, principal/agent—a fiduciary relationship is created only where one party, because of some close relationship, is heavily dependent upon the judgment or advice of another. *Seaboard Seed*, 632 F.Supp. at 1136 (citing *Carey Electric Contracting, Inc. v. First Nat'l Bank of Elgin*, 74 Ill.App.3d 233, 237–38, 30 Ill.Dec. 104, 108, 392 N.E.2d 759, 763 (1979)); *Gutfreund v. Christoph*, 658 F.Supp. 1378, 1395 (N.D.Ill.1987) (same).

In the instant case, Craig does not claim that he had a close relationship with Bitler; in fact, the entire relationship allegedly consisted of two phone conversations in which Craig inquired about trading activity on his account at First American. Craig also does not allege that he relied on any advice from Bitler, or that he placed any trust or confidence in Bitler's judgment. Bitler claims that his allegations create a factual question as to whether a fiduciary relationship existed between a broker and

his customer. Craig's allegations, however, are that Anthony, not Bitler, was his broker. Therefore, the court finds no basis in the complaint for Craig's breach of fiduciary duty claim against Bitler. As a result, Count V must therefore be dismissed as it relates to Bitler.

**C. Count VI: Common Law Fraud**

 Under Illinois law, in order to state a claim for common law fraud, a plaintiff must allege: (1) a false statement of material fact; (2) knowledge or belief of the falsity of the statement on the part of the party making it; (3) intent to induce the other party to act; (4) action by the other party in justifiable reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. *Soules v. General Motors Corp.*, 79 Ill.2d 282, 286, 37 Ill.Dec. 597, 599, 402 N.E.2d 599, 601 (1980).

 In the instant case, reading Craig's allegations in the light most favorable to him[8] Count VI alleges that Bitler told Craig that the unauthorized trades which Anthony had executed on Craig's account had been reversed, despite Bitler's knowledge of the falsity of that statement. Count VI further alleges that Bitler made that statement intending for Craig to rely on it, and that Craig suffered damages as a result of his reliance on that statement. These allegations sufficiently satisfy each of the elements set forth in *Soules* to state a fraud claim against Bitler.

Bitler argues that any damages Craig suffered resulted from Anthony's misrepresentations and unauthorized trading, not from Bitler's assurances that the unauthorized trades had been reversed. While that may prove to be true after discovery, that is not what is alleged in the complaint. Craig claims, "Despite Bitler's representations, the transactions were not reversed and, as a result, the accounts have sustained substantial losses." Complaint,

**8.** Count VI incorporates paragraphs 10–21 of the complaint for the factual basis of the fraud claim. The factual allegations which pertain to Bitler, however, are set forth in paragraph 22. In his memorandum, Craig asserts that the failure to incorporate paragraph 22 into Count VI was merely an oversight or a typographical error, so he seeks to amend Count VI to incorporate paragraph 22. The court reads Count 22 so amended.

¶ 22. This allegation, which must be accepted as true and read in the light most favorable to Craig at this stage of the litigation, claims that Craig sustained losses from Bitler's misrepresentations *in addition to* any losses he sustained from Anthony's unauthorized trading. At this point, this court cannot hold that Craig is unable to prove any set of facts consistent with that claim for damages. Therefore, Bitler's motion to dismiss must be denied to the extent that it relates to Count VI.

D. Count VII: Negligent Misrepresentation

 In order to state a claim for negligent misrepresentation under Illinois law, plaintiff must show: (1) that the defendant is in the business of supplying information; (2) that defendant supplied information to plaintiff for guidance in plaintiff's business transactions; and (3) that the information was supplied for guidance in plaintiff's business dealings with *third parties.* *Rankow v. First Chicago Corp.,* 870 F.2d 356, 362–63 (7th Cir.1989) (citing *Black, Jackson and Simmons Ins. Brokerage, Inc. v. IBM Corp.,* 109 Ill.App.3d 132, 135, 64 Ill.Dec. 730, 732, 440 N.E.2d 282, 284 (1982)).

Under this test, Craig cannot sustain a claim for negligent misrepresentation against Bitler based on the allegations in the complaint. Craig simply alleges that Bitler made certain misrepresentations regarding past transactions which had been executed on Craig's account at First American. Nowhere in the complaint does Craig claim that he used any information acquired from Bitler in conducting business transactions with third parties. In his memorandum, Craig contends that the information provided to him by "defendants" guided him in his business dealings with the issuers of the stocks he purchased through First American. While that may be true with respect to Anthony, it cannot be true with respect to Bitler. Bitler did not have any contact with Craig until after the purchases on Craig's account at First American had already been executed. Moreover, the complaint does not allege that Bitler's statements guided Craig in any subsequent business transactions. Therefore, the complaint fails to state a claim against Bitler for negligent misrepresentation.

CONCLUSION

For the foregoing reasons, Bitler's motion to dismiss is granted with respect to Counts I–V and Count VII. The motion is denied with respect to Count VI.

IT IS SO ORDERED.